IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

KIMYATA BOCOUM                                                                    PLAINTIFF

VS.                                                         CIVIL ACTION NO. 3:13cv1073-DPJ-FKB

CAROLYN W. COLVIN,
ACTING COMMISSIONER
OF SOCIAL SECURITY                                                              DEFENDANT

### **REPORT AND RECOMMENDATION**

Kimyata Bocoum brought this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration. Presently before the Court is Plaintiff's motion for summary judgment [9] and Defendant's motion to affirm the Commissioner's decision [11]. Having considered the memoranda of the parties and the administrative record, the undersigned recommends that Plaintiff's motion for summary judgment be denied and that Defendant's motion to affirm the Commissioner's decision be granted.

### **I. Procedural History**

Bocoum was born on April 13, 1982. She was in special education in school and received a certificate upon completion of the twelfth grade. Her past relevant work experience is as a poultry worker and a poultry boner. She filed for supplemental security income, originally alleging an onset date of September 1, 2008. Her applications were denied initially and on reconsideration, and she requested and was granted a hearing before an administrative law judge (ALJ). At the hearing on August 5, 2011, Bocoum

amended her alleged onset date to December 11, 2009. On October 24, 2011, the ALJ issued a decision finding that Bocoum is not disabled. The Appeals Council denied review, thereby making the decision of the ALJ the final decision of the Commissioner. Bocoum then brought this appeal pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II. Evidence Before the ALJ and the Appeals Council

Bocoum was diagnosed with Crohn's disease in October of 2007. (R. 276).[1] She responded well to treatment and was near symptomatic remission by February of 2008. (R. 269). Thereafter, however, she was not compliant with her medication and was lost to followup until December of 2009, when she was hospitalized for an acute episode. (R. 285-92). Once she was back on her medication, she did well. She experienced an acute episode in March of 2010 (R. 293-99) and again in July of 2010 (R. 326-28). The medical records indicate that as of her hearing date she had experienced no subsequent flare-ups. In April of 2011, her treating physician, Dr. Eddie Starnes, described her Crohn's disease as clinically in remission. (R. 314).

Brett Vallette, Ph.D., performed a consultative psychological examination in September of 2005.[2] (R. 215-17). Testing revealed a verbal IQ of 73, performance IQ of 70, and full-scale IQ of 69. (R. 216-17). Dr. Vallette stated that Bocoum did not appear to be mentally retarded, noting that she was social, had friends and a boyfriend, and was able to take care of her children. (R. 217). Impression was Axis I, learning disability and

---

[1]Citations reflect the original pagination of the administrative record.

[2]This was apparently in connection with an earlier SSI application.

borderline IQ; Axis II and III, none; Axis IV, mild to moderate psycho-social stressors, and Axis V, a Global Assessment of Functioning (GAF) of 65 to 70. (R. 217). Dr. Vallette described Bocoum as functioning in the low end of borderline intellectual ability. (R. 217).

A comprehensive mental status exam was performed by Jan Boggs, Ph.D., in October of 2006. (R. 219-21). His assessment was Axis I, dysthymia, r/o borderline intelligence; Axis II, dependent and avoidant personality features; Axis III, obesity, smoker. (R. 221). He stated that Bocoum appeared to be "committed to being dependent and avoiding work." (R. 221). Dr. Boggs performed a second exam in April of 2008. (R. 243-45). At this examination, his assessment was Axis I, major depression, recurrent, moderate; Axis II, none; Axis III, Crohn's disease, hypertension, r/o anemia, obesity, smoker. (R. 245). Dr. Boggs observed that Bocoum's tendency to withdraw from social contact could be problematic with coworkers and supervisors in a work setting. (R. 245).

A psychiatric review technique form was completed by David Powers, Ph.D., in May of 2008. (R. 246-59) Dr. Powers opined that Bocoum had moderate limitations in activities of daily living, social functioning, and concentration, persistence or pace, and no episodes of decompensation. (R. 256).

In December of 2010 Bocoum presented to Weems Community Mental Health Center (Weems) with complaints of difficulties functioning because of problems with her boyfriend. (R. 357-63). Diagnosis was Axis I, dysthymic disorder, early onset; Axis II, none; Axis III, Crohn's disease and asthma by report; Axis IV, relationship problems, financial stressors, family problems, and poor social skills; Axis V, a GAF of 55. (R. 363). She was referred for therapy to develop coping skills and increase self-esteem and was

3

prescribed Celexa. (R. 353-63). During the early part of 2011, she received treatment through supportive therapy at Weems. (R. 349-52).

School records for Bocoum were admitted into the administrative file at the Appeals Council level. These records indicate that Bocoum attended special education classes and performed poorly in school. (R. 374-82). In the eight grade, she ranked in the sixth percentile on the Iowa Test of Basic Skills. (R. 383-85).

At the hearing, Bocoum testified that she lives in an apartment with her three young children. (R. 33-34). Bocoum does not have a driver's license because she was unable to pass the test. (R. 36). She does not go out or socialize. (R. 45). She is able to take care of the daily needs of her children, although her mother and aunt help with babysitting and taking the children places. (R. 34). Bocoum testified that she suffers from asthma and uses a rescue inhaler several times. (R. 30-31). Her asthma prevents her from walking more than one hundred yards without stopping. She also stated that she has problems lifting because of back pain and a crooked spine. (R. 41). According to Bocoum, she suffers from a flare-up of her Crohn's disease approximately once or twice a month. (R. 32). During these episodes, which last at least three days, she stays in bed and restricts herself to a liquid diet. (R. 32, 38). She testified that in a work situation, in addition to regular morning, lunch, and afternoon breaks, she would need an additional three or four bathroom breaks in a typical work day because of her Crohn's disease. (R. 38).

### III.   The Decision of the ALJ and Analysis

In his decision, the ALJ worked through the familiar sequential evaluation process for determining disability.[3] He found that Bocoum has the severe impairments of obesity,[4] Crohn's disease, and borderline intellectual functioning, and the non-severe impairments of asthma and dysthymic disorder. (R. 12).   At step three, the ALJ determined that Bocoum does not have an impairment or combination of impairments that meets or medically equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R.

---

[3]In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

(1)    whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

(2)    whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

(3)    whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

(4)    whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

(5)    whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.920.  The analysis ends at the point at which a finding of disability or non-disability is required.  The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[4]At the hearing, Bocoum testified that she her height is  5' 3 1/2" and that she weighs 216 pounds. (R. 31).

5

13). The ALJ found that Bocoum has the residual functional capacity to perform medium work as defined by 20 C.F.R. § 416.967(c), with the limitation that she can perform only unskilled work. (R. 14). He specifically found that Bocoum's testimony regarding the limitations imposed by her Crohn's disease was not credible and was inconsistent with the medical record. (R. 14-15). Relying upon the testimony of a vocational expert, the ALJ determined that Bocoum can perform her past relevant work and is therefore not disabled. (R. 15-16).

In reviewing the Commissioner's decision, this court is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).[5] In her memorandum, Bocoum makes essentially three arguments: (1) that the Commissioner erred in failing to find that she meets Listing 12.05(C), (2) that the ALJ erred in failing to find that Bocoum's depression constituted a severe impairment and in failing to provide a proper explanation for this finding, and (3) that the ALJ erred by failing to consider the combined effects of all of Bocoum's impairments.

---

[5] "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance. . . ." *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989) (quoting *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987)). If the Commissioner's decision is supported by substantial evidence, it is conclusive and must be affirmed, *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)), even if the court finds that the preponderance of the evidence is *against* the Commissioner's decision, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

*Mental Retardation*.  Bocoum argues that she meets the requirements for Listing 12.05(C) for mental retardation and should therefore have been adjudicated disabled at step three.  The listing for 12.05(C) provides in relevant part as follows:

> 12.05  *Mental Retardation*:  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function . . . .

It is undisputed that Bocoum meets the C criteria; the issue is whether she has deficits in adaptive functioning and, if so, whether these deficits initially manifested before age 22.  As to the former question, Bocoum points to Dr. Boggs's note that Bocoum tends to stay to herself and avoid social contact and that her family helps her care for her children.  She also points out that Dr. Powers opined that she has moderate limitations in the areas of social interaction.  (R. 261).  Finally, Bocoum relies on her poor performance in school and her placement in special education as evidence of deficits in adaptive functioning that manifested during the developmental period.

In the opinion of the undersigned, this evidence was not so persuasive that the Commissioner was required to find that Bocoum meets the listing for mental retardation.  Plaintiff maintains a home and takes care of her personal needs and those of her children.  There is no evidence that she does not handle her own finances.  She has successfully

7

worked in the past.[6] In short, there is substantial evidence to support a finding that she does not have significant deficits in adaptive functioning. Furthermore, no medical source has ever described her as mentally retarded; indeed, Dr. Vallette stated specifically to the contrary. The undersigned concludes that Bocoum has not shown that the Commissioner erred in failing to find that she meets the listing for mental retardation; neither was there error in the ALJ's failure to expressly consider this listing.

*Depression.* The ALJ found that Bocoum suffers from dysthymic disorder and that this impairment is non-severe. Bocoum argues that the ALJ's failure to find that her depression constitutes a severe impairment, and his failure to adequately discuss this issue, constitute error. In support of her argument, she relies primarily on the assessment of Dr. Boggs that she suffered from major depression. However, this opinion was rendered in connection with a mental status examination performed on April of 2008 - prior to Plaintiff's amended alleged onset date. During the relevant time period, Plaintiff's diagnosis was dysthymic disorder rather than major depression. Treatment consisted primarily of supportive therapy with the goal of increasing her coping skills, and the treatment notes indicate that she made progress with therapy. The evidence does not indicate that her depression was such that it would be expected to interfere with her ability to work. *See Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). The undersigned concludes that there is substantial evidence for the ALJ's finding that her depression was

---

[6]A work questionnaire filled out by a former supervisor indicates that Bocoum was able to understand and remember instructions, make work-related decisions, maintain attention and concentration, complete tasks, maintain an ordinary work routine, meet productivity goals, and meet accuracy/quality work goals. (R. 126-28).

non-severe. Furthermore, the basis of the ALJ's finding on this point is apparent from the record; his failure to explain his reasoning in greater detail does not constitute reversible error.

*Consideration of combined effect of impairments.* Bocoum's final argument is that the ALJ erred in failing to consider the combined effects of all of her impairments, as required by SSR 96-8p, specifically her alleged major depression. The ALJ did not find that Bocoum suffered from major depression, and this finding is supported by substantial evidence. Thus, there was no reason for him to consider major depression in combination with the impairments found by him. Furthermore, the ALJ specifically acknowledged his duty to consider all of Bocoum's impairments, both severe and non-severe. (R. 11). This argument is without merit.

## IV. Conclusion

For the reasons stated herein, the undersigned recommends that Plaintiff's motion [9] be denied, that Defendant's motion [11] be granted, and that the decision of the Commissioner be affirmed. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C.

§ 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

    Respectfully submitted, this the 27th day of February, 2014.

                                        <u>/s/ F. Keith Ball</u>
                                        UNITED STATES MAGISTRATE JUDGE